**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on April 22, 2010, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: April 22, 2010**

_____
**Arthur I. Harris
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 Proceedings |
| | ) | |
| Kimberly A. Saley, | ) | Case No. 08-13599 |
|     Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Marvin Sicherman, Ch. 7 Trustee, | ) | Judge Arthur I. Harris |
|     Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. 09-1312 |
| | ) | |
| GMAC Financial Services, | ) | |
|     Defendant. | ) | |

MEMORANDUM OF OPINION[1]

This matter is currently before the Court on cross-motions for summary judgment filed by the plaintiff-trustee, Marvin Sicherman (trustee), and the creditor-defendant, GMAC Financial Services (GMAC). At issue is whether the

---

[1] This Memorandum of Opinion is not intended for official publication.

trustee may avoid a prepetition payment the debtor made to GMAC for a motor vehicle loan when the vehicle was titled solely in the name of the debtor's spouse. For the reasons that follow, the motion of the trustee for summary judgment is granted, and the motion of GMAC for summary judgment is denied.

FACTS AND PROCEDURAL BACKGROUND

Unless otherwise indicated the following facts are undisputed. On May 14, 2008, the debtor Kimberly Saley (debtor) filed a voluntary petition under Chapter 7 of the Bankruptcy Code (Case # 08-13599). The debtor's husband Jason Saley did not file for bankruptcy. On August 22, 2008, the debtor received a discharge.

*1. Retail Installment Sale Contract and obligation to GMAC*

On September 30, 2004, the debtor and her spouse entered into a retail installment sale contract (contract) to purchase a 2004 GMC Yukon (vehicle) from Classic Pontiac GMC. According to the contract, the vehicle's total cost was $49,800.24, which was to be paid in 72 monthly payments of $691.67. The debtor signed the contract as a co-buyer. Under the terms of the contract, "A co-buyer is a person who is responsible for paying the entire debt." "An other owner is a person whose name is on the title ...." *See* Docket #22-3.

On October 8, 2004, the certificate of title for the vehicle was issued. The

certificate of title lists the debtor's husband as the owner of the vehicle. The debtor is not listed on the certificate of title as an owner of the vehicle. According to the debtor's affidavit, her spouse is the sole owner of the vehicle. GMAC is listed as the first lienholder.

The debtor listed GMAC as an unsecured creditor in Schedule F of her bankruptcy petition. On June 26, 2008, GMAC filed a proof of claim in the debtor's bankruptcy case, in which GMAC asserted that it held a secured claim of $21,715.52.

*2. Prepetition Transfer from the debtor to GMAC*

On or about April 17, 2008, the debtor paid GMAC $1,621.95. According to the debtor's affidavit, the funds were drawn from a National City checking account which she owned.

*3. The Current Adversary Proceeding*

On September 14, 2009, the trustee initiated this adversary proceeding against GMAC to avoid the transfer of $1,621.95 from the debtor to GMAC pursuant to 11 U.S.C. §§ 544, 547, and 551. On October 20, 2009, GMAC filed its answer. On February 22, 2010, the trustee and GMAC filed the following joint stipulations of fact.

> 1. The Plaintiff's claims in this adversary proceeding are within the core matter jurisdiction of the Bankruptcy Court.

2. On May 14, 2008, the Debtor, Kimberly A. Saley (the "Debtor"), filed a petition in the United States Bankruptcy Court for the Northern District of Ohio seeking relief under Chapter 7 of title 11 of the United States Code (the "Debtor's Case").

3. The Plaintiff is the Trustee in Bankruptcy for the Debtor.

4. On or about April 17, 2008, funds were transferred in the sum of $1,621.95 to GMAC (the "Transfer").

5. An accurate copy of the check evidencing the Transfer to GMAC is attached hereto as Exhibit "A" and is incorporated herein by reference.

6. At the time of the Transfer, the Debtor was indebted to GMAC in a sum not less than $20,000.00.

7. The Transfer was more than the minimum monthly payment of $691.67 due to GMAC.

8. An account summary for the debt to GMAC, dated as of March 24, 2008, is attached hereto as Exhibit "B" and is incorporated herein by reference.

9. Pursuant to the Trustee's calculation(s), creditors with general unsecured claims will not be paid in full in the Debtor's Case, regardless of whether the Transfer is avoided as a preference.

10. The parties stipulate to the fact that no appraisals were conducted on the 2004 GMC motor vehicle on the date the bankruptcy was filed, or in the 90 days preceding the filing of the bankruptcy.

On February 22, 2010, the trustee and GMAC filed cross-motions for summary judgment. The briefing on the cross-motions for summary judgment is now complete, and the Court is ready to rule.

## JURISDICTION

The Court has jurisdiction over this action. Actions seeking to avoid preferential transfers are core proceedings under 28 U.S.C. § 157(b)(2)(A), and (F). The Court has jurisdiction over core proceedings under 28 U.S.C. § 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County,* 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial."

*Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir. 1997). *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will review the evidence in a light most favorable to the nonmoving party. *See Tennessee Department of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir. 1996).

## DISCUSSION

The parties have filed cross-motions for summary judgment. In its motion for summary judgment, GMAC argues that the $1621.95 prepetition payment from the debtor was in repayment of a secured loan, the collateral for which is the vehicle. GMAC asserts that it is oversecured. Consequently, GMAC argues that the trustee cannot satisfy the elements of a preferential transfer since it would be paid in full from liquidation of the collateral. In his motion for summary judgment, the trustee argues that pursuant to Ohio Revised Code § 4505.04 the debtor does not have an ownership interest in the vehicle, meaning that GMAC is an unsecured creditor. Consequently, the trustee argues that the $1,621.95 payment made by the debtor to GMAC constitutes a preferential transfer under

6

§ 547 of the Bankruptcy Code.

### A. Ownership of the Vehicle

Whether the debtor has an ownership interest in the vehicle is crucial in determining if the trustee or GMAC is entitled to summary judgment. If the debtor has an ownership interest in the vehicle, then GMAC is a secured creditor. As the Sixth Circuit stated, "Payments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation. Payments to an unsecured or undersecured creditor, however, are preferential." *Ray v. City Bank and Trust Co. (In re C-L Cartage Co.)*, 899 F.2d 1490, 1493 (6th Cir. 1990).

That GMAC may be secured by property that is not owned by the debtor is irrelevant. *See*, *e.g.*, *Smith v. Creative Fin. Mgmt., Inc. (In re Virginia-Carolina Fin. Corp.)*, 954 F.2d 193, 198 (4th Cir.1992) (prepetition transfer to creditor that is fully secured by property of third party in which the debtor holds no interest is subject to avoidance under section 547); *In re Pameco Corp.*, 356 B.R. 327 (Bankr. S.D.N.Y. 2006) (same). "Indeed, the purpose of § 547 is not to establish 'whether a creditor may have recovered all of the monies owed by the debtor from any source whatsoever, but instead ... whether the creditor would have received less than a 100% payout in a Chapter 7 liquidation.' " *In re Pameco Corp.*,

7

356 B.R. at 336 (*quoting In re Virginia-Carolina Fin. Corp.*, 954 F.2d at 198). As such, before the Court addresses whether the transfer from the debtor to GMAC constitutes an avoidable preference under § 547 of the Bankruptcy Code, the Court will determine whether the debtor has an ownership interest in the vehicle.

Section 541 of the Bankruptcy Code specifies the property that comes into the bankruptcy estate; however, the Court looks to state law to determine ownership of an asset. *See Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law").

Section 4505.04 of the Ohio Revised Code addresses ownership of a motor vehicle. Section 4505.04 provides in pertinent part:

> (A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or there is delivered to the person a manufacturer's or importer's certificate for it, or a certificate of title to it is assigned as authorized by section 4505.032 of the revised code; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.
>
> (B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:
>
> > (1) By a certificate of title, an assignment of a certificate of title made

8

> under section 4505.032 of the revised code, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.21 of the revised code;
>
> (2) By admission in the pleadings or stipulation of the parties.

Courts are split over whether this provision permits a court to look beyond the certificate of title to determine ownership. Some courts have determined that the plain language of the statute only permits a court to consider the certificate of title when determining ownership. *See In re Caddarette*, 362 B.R. 829, 837 (Bankr. N.D. Ohio 2006) ("as a matter of law, § 4505.04 compels that the name, as set forth on a vehicle's certificate of title, controls when making a determination as to property of the estate under § 541") (Judge Speer). Other courts have found that where an express trust exists and the beneficial owner is not listed on the certificate of title a court may look beyond the certificate of title to determine ownership. *See Bavely v. Powell (In re Baskett),* 219 B.R. 754, 762 (6th Cir. B.A.P. 1998) (even though the certificate of title listed the debtor as the owner the court found that "if an express trust existed and Powell was the beneficial owner, the vehicle would not be property of the bankruptcy estate and would not be subject to turnover"); *see also In re Amos*, 201 B.R. 184, 187 (Bankr. N.D. Ohio 1996) (Judge Snow).

9

The Court does not have to decide which line of cases to follow. Those courts which have looked beyond the certificate of title to determine ownership did so only after finding that an express trust existed. For example, in *In re Groves* the debtor's son obtained a loan to purchase a car, but the debtor took title so she could obtain temporary tags while her son was away at school. *See In re Groves,* No. 05-76317, 2006 WL 6211798, at *4 (Bankr. N.D. Ohio April 13, 2006) (debtor's agreement to take title to vehicle solely as an accommodation to her son "created an express trust, under which Debtor holds title for the benefit and use of [her son]") (Judge Whipple); *see also In re Amos*, 201 B.R. at 186 (express trust created when debtor's boyfriend paid for and used vehicle, but debtor agreed to take title because boyfriend's driver's license had been suspended).

The situation in this case does not involve an express trust. While an express trust does not require any particular formalities, it does require an intent to create a relationship that would constitute a trust. *See In re Amos*, 201 B.R. at 186-87 (citing Restatement (Third) of Trusts § 13, cmt. a (Tentative Draft No. 1 1996)). Here, the debtor stated that the vehicle is solely owned by her husband, who is also the only person listed on the certificate of title. (Saley Aff. ¶ 10, Pl. Summ. J.) ("I never owned the vehicle, and my name was never on the title of the vehicle").

There is no evidence that the debtor's husband holds title for the benefit of the debtor, or that they ever intended to create a settlor trustee relationship.

Since this case does not involve an express trust, the Court will look to the certificate of title in determining ownership of the vehicle. The debtor's spouse is the only person listed on the certificate of title. As such, the Court finds that the debtor does not have an ownership interest in the vehicle. In addition, the Court rejects as inapplicable GMAC's reference to case law holding that a person takes an ownership interest in a motor vehicle upon taking possession of the vehicle, even if the person's name is not placed on the certificate of title until later. *See*, *e.g.*, *Whittaker v. Ford Motor Credit Co. (In re Edney)*, 47 F.3d 1168 (Table) (6th Cir.1995), 1995 WL 16883 (unpublished); *In re Jackson*, 2006 WL 3064087 (Bankr. N.D. Ohio Oct. 23, 2006) (Adv. 06-6082); *In re Knee*, 254 B.R 710 (Bankr. S.D. Ohio 2000). In each of these cases, the court held that the date of delivery, not the date of issuance of the certificate of title, determines the timing of the passage of title and the attachment of the security interest. *See* 254 B.R. at 710 (*citing In re Edney* at *3-4); 2006 WL 3064087 at *3-4. In each of these cases, the creditor failed to perfect its security interest within the 10 days permitted under then applicable provisions of 11 U.S.C. § 547(e)(2). What distinguishes the present case from *Edney* and its progeny is that, in the present case, the debtor's

11

name was never placed on the certificate of title. While GMAC may have had a security interest in property of the debtor's estate had the debtor's name ultimately been placed on the certificate of title, GMAC cannot have a security interest in property of the estate if the debtor herself has no ownership interest in the vehicle. Consequently, GMAC's claim will be treated a general unsecured claim.

B. Preference Under § 547

The trustee seeks to avoid the transfer of $1,621.95 from the debtor to GMAC pursuant to 11 U.S.C. § 547(b). Section 547 of the Bankruptcy Code enables a trustee to "avoid certain transfers made to creditors within 90 days prior to the commencement of the bankruptcy case." *Chase Manhattan Mort. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 463 (6th Cir. 2008). The five elements of a preferential transfer are set forth in § 547(b). *See In re Lee,* 530 F.3d at 463. Section 547(b) provides:

> Except as provided in subsection (C) and (I) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
>   (1)   to or for the benefit of a creditor;
>   (2)   for or on account of an antecedent debt owed by the debtor before such transfer was made;
>   (3)   made while the debtor was insolvent;
>   (4)   made –
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider; and

12

    (5) that enables such creditor to receive more than such creditor would receive if –
     (A) the case were a case under chapter 7 of this title;
     (B) the transfer had not been made; and
     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

  The trustee has satisfied each of the elements. The first element requires the plaintiff to show that the transfer was made for the "benefit of a creditor." § 547(b)(1). The debtor paid GMAC $1,621.95, which was more than double the monthly payment of $691.67 that was specified in the contract. The debtor made the payment from funds that she had in a National City Bank checking account. The debtor made this payment for the benefit of GMAC.

  The second element requires the plaintiff to show that the transfer was made "on account of an antecedent debt owed by the debtor." § 547(b)(2). On September 30, 2004, the debtor and her spouse entered into the contract to purchase the vehicle for $49,800.24. (Ex. C, GMAC Resp. to Pl.'s Mot. Summ. J.). The debtor signed the contract as a "co-buyer." (Ex. C, GMAC Resp. to Pl.'s Mot. Summ. J.). The debtor made the prepetition payment of $1621.95 to GMAC on account of this debt.

  The third element requires the plaintiff to show that the transfer was made "while the debtor was insolvent." § 547(b)(3). Under the Bankruptcy Code, "the debtor is presumed to have been insolvent on and during the ninety days

13

immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). The transfer at issue occurred on or about April 17, 2008. The debtor filed for bankruptcy on May 14, 2008, which was less than ninety days after the date of the transfer. Consequently, the debtor was presumptively insolvent at the time of the transfer. While this presumption may be overcome, neither party has provided any evidence that the debtor was solvent at the time of the transfer. GMAC, in its answer to the complaint, states that the debtor was not insolvent at the time of the transfer. (GMAC's Answer to Complaint, ¶ 9); however, GMAC has provided no evidence to support this assertion. Nor is the Court aware of any evidence which would overcome the statutory presumption of insolvency in § 547(f). As such, the Court finds that the debtor was insolvent at the time of the transfer.

The fourth element requires the plaintiff to show that the transfer was made "on or within 90 days before the date of the filing of the petition." § 547(b)(4)(A). Since the transfer was made within ninety days of the date that the debtor filed her bankruptcy petition, the fourth element is satisfied.

To satisfy the final element a plaintiff must show that the transfer "enables a creditor to receive more than it would receive if the case were a Chapter 7 case and the transfer had not been made." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 464 (6th Cir. 1991). Additionally, the

14

Sixth Circuit has held that, "[u]nless the estate is sufficient to provide a 100% distribution, any unsecured creditor ... who receives a payment during the preference period is in a position to receive more than it would have under a Chapter 7 liquidation." *In re Chattanooga Wholesale Antiques*, 930 F.2d at 465.

According to the proof of claim that GMAC filed in the debtor's bankruptcy case the debtor owes GMAC $21,715.52. Just weeks before the debtor filed for bankruptcy, GMAC received $1,621.95, which was more than double the monthly payment of $691.67 that was specified in the contract. The claims register shows claims for $68,543.70, of which at least $33,262.41 is unsecured. Additionally, the claim of GMAC is listed as a secured claim; however, as the Court already determined, the claim of GMAC is a general unsecured claim. As such, unsecured claims total at least $54,977.93. According to the trustee's affidavit, he has collected $1,250.00 for the bankruptcy estate. (Sicherman Aff. ¶ 5, Pl. Summ. J.). The only additional funds that the trustee might be able to collect would come from a recovery in this adversary proceeding. (Sicherman Aff. ¶ 6, Pl. Summ. J.). Consequently, the trustee does not expect to pay creditors in full. (Sicherman Aff. ¶ 7, Pl. Summ. J.).

The payment that GMAC received from the debtor represented a repayment of 7% of GMAC's total claim. Based on the trustee's affidavit, this is a higher

return than other unsecured creditor's stand to receive. Accordingly, the trustee has satisfied the fifth element.

The transfer was a preference under § 547(b). As such, the trustee may avoid the transfer and recover from GMAC $1,621.95 pursuant to § 550 of the Bankruptcy Code.

## CONCLUSION

For the reasons stated above, the trustee's motion for summary judgment is granted, and GMAC's motion for summary judgment is denied. The Court will enter judgment in favor of the trustee and against GMAC in the amount of $1,621.95 plus prejudgment interest from September 14, 2009, at the judgment rate provided under 28 U.S.C. § 1961. Each party shall bear its own costs and attorney's fees.

IT IS SO ORDERED.